IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01949-MEH

KERRY FISHER and
DEBORAH FISHER,

    Plaintiffs / Counter Defendants,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

    Defendant / Counter Claimant.

___

**ORDER ON MOTION FOR RECONSIDERATION OF COURT'S ORDER
RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
___

**Michael E. Hegarty, United States Magistrate Judge**.

    The parties filed cross-motions for summary judgment, which were resolved in my Order dated June 14, 2018, ECF No. 80. Plaintiffs have requested that I reconsider the portion of the Order granting summary judgment to the Defendant on Plaintiffs' claim for damaged roof metals caused by a June 2015 wind and hail storm. *See id.* at 15–17. For the following reasons, Plaintiffs' Motion for Reconsideration [filed July 12, 2018; ECF No. 84] is **granted.**

## LEGAL STANDARD

    Plaintiffs move to alter or amend the judgment against them under Federal Rule of Civil Procedure 59(e). The Tenth Circuit has outlined three major grounds that justify reconsideration: (1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion for reconsideration is not an appropriate vehicle "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

But it "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.*; *see also Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) ("A Rule 59(e) motion to alter or amend the judgment should be granted only to correct manifest errors of law or to present newly discovered evidence." (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992))).

## **ANALYSIS**

This dispute centers on Defendant's refusal to cover hail damage to Plaintiffs' roof metals. The applicable insurance policy provides, in relevant part, that the insurer "will not pay for any damage caused by hail to any metal vent, flashing, drip edge, ridge, valley, accessory, or trim unless such metal component . . . will no longer: (1) prevent water from entering the building; or (2) perform any other intended function." *See* Order at 3. Plaintiffs argue that I erroneously determined as a matter of law that the damage to their roof metals was not a covered event under this provision. Their argument has two components, both of which relate to functionality. First, they contend I erred in determining that the damage to the roof metals did not impact their function. Second, they contend I failed to address their argument that the phrase "will no longer . . . perform any other intended function" is ambiguous.

I begin my analysis by recapping the parties' arguments during their earlier briefing on those issues, as the scope of those arguments affects my inquiry. The parties filed cross-motions for summary judgment. *See* ECF No. 37 & 38. In its motion for summary judgment, Defendant argued that cosmetic damage to the roof metals was not covered under the policy. Am. Family's Mot. for Summ. J. 11–12, ECF No. 37. In response, Plaintiffs disagreed that the policy even spoke to cosmetic damage. *See* Resp. to Def's Mot. for Summ. J. 11, ECF No. 51. They then took issue

with Defendant's characterization of the damage as "cosmetic"—noting that the appraisal award "found that the metals were damaged to the extent that they had to be replaced." *Id.* Plaintiffs highlighted the statement in the appraisal that "the damage was so severe it could be seen from the ground." *Id.* at 12. In addition, Plaintiffs asserted that the term "perform *any other* intended function" was "fairly ambiguous." *Id.* (emphasis in original). With respect to functionality, Plaintiffs did not allege that the roof metals would no longer prevent water from entering the building; the only argument advanced in their response was the conclusory allegation that aesthetics is part of an "intended function" in a "high-end, covenant controlled community," *id.* Ultimately, I concluded that Plaintiffs had not produced any evidence indicating that the damage to the roof metals "affected their intended purpose(s)" and that Plaintiffs had not "establish[ed] the roof's lack of functionality," such that summary judgment on this issue was warranted. Order at 16 & n.2. In reaching this conclusion, I did not expressly consider whether the contractual language underlying the parties' dispute was clear or ambiguous.

In the Motion for Reconsideration, Plaintiffs now argue for the first time that "the roofing metals are functionally impaired because the dents will allow water to pool in the bottoms of the gutters and not be directed away from the dwelling, and this . . . sitting water will result in rusting to the gutters that may allow holes to develop." Mot. for Recons. 2. This argument concerning the potential for rust and holes cannot serve as a basis for a motion to reconsider because it was not raised in the original briefs. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

In addition to raising this new argument, Plaintiffs repeat an argument that I rejected in my Order for lack of evidentiary support—namely, that cosmetic appearance could be an "intended

function." *See* Order at 16. Because I deemed Plaintiffs' allegation to be wholly conclusory and unsupported by evidence, I did not specifically address whether visible dents in the roof metals and their attendant effect on the aesthetics of a roof in an expensive community creates a triable issue of fact as to whether the damage falls within "any other intended function." *Cf. Dragoo v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:16-CV-984-O, 2018 WL 1536639, at *4 (N.D. Tex. Jan. 5, 2018) ("Plaintiff points to some evidence to support that the hail damage to his roof is not cosmetic, therefore a fact issue exists."). I believe in their original motion, and here, Plaintiffs have woefully failed to provide any factual basis for alleging an aesthetic function.

Even so, upon further reflection, I conclude that I should have considered whether the contractual language underlying the parties' dispute—"or any other intended function"—is clear or ambiguous under prevailing Colorado law: "We must implement the clear terms of the agreement if the language of the contract is plain and unambiguous. . . . Thus, the threshold inquiry . . . is whether the contract is ambiguous." *Ad Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 380 (Colo. 2000). I now make this inquiry.

Plaintiffs argue here (and in their original briefing on the motions for summary judgment) that such term is ambiguous and that the Court should allocate the burden on this issue to Defendant, citing Colorado case law that requires the insurer to prove that a policy exclusion applies. *See, e.g., McGowan v. State Farm Fire & Cas. Co.*, 100 P.3d 521, 523 (Colo. App. 2004) ("Exclusionary clauses exempting the insurer from providing coverage in certain circumstances must be written in clear and specific language and construed in favor of coverage. . . . The insurer therefore has the burden of demonstrating that the policy exclusion applies in the particular instances at issue and that it is not susceptible of any other reasonable interpretation.").

4

My review of case law interpreting insurance contracts in the context of hail damage to a home shows the following. Courts distinguish between functional versus aesthetic damage, finding the two to be qualitatively different. Yet all courts I surveyed have found aesthetic or cosmetic damage to a metal roof to fall within the purview of the contractual term "physical loss or damage." *See, e.g.*, *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 977–78 (D. Kan. 2016) (same); *Advance Cable Co. v. Cincinnati Ins. Co.*, No. 13-cv-229, 2014 WL 975580 (W.D. Wis. June 20, 2014), *aff'd*, 788 F.3d 743, 746–48 (7th Cir. 2015) (construing "direct physical loss" and "accidental loss or damage" and finding that insured was entitled to coverage where hail dented a rooftop). These courts interpreted "damage" or "physical" to mean physical alteration, which logically includes heavily dented metal roofing.

The contract before me does not rely solely on physical damage to define a covered event, however. To be sure, the current insurance contract covers "damage" to roof "metal" (which would logically include dents), but only if the damage will no longer (1) prevent water from entering the building *or* (2) perform any other intended function. Many insurance contracts explicitly exclude cosmetic or aesthetic damage (*e.g.*, the one in *Dragoo*); this one does not. Further, other insurance contracts qualify the words "intended function." *See, e.g.*, *Hahn v. United Fire & Cas. Co.*, No. 6:15-CV-00218 RP, 2017 WL 1289024, at *4 (W.D. Tex. Apr. 6, 2017) (considering a policy that excluded hail damage to metal unless the roof will no longer "perform its intended function *to keep out elements over an extended period of time*") (emphasis added)). Again, this contract does not contain that qualifier on "intended function." I could find no cases interpreting the particular language used in this contract.

5

As I have previously noted, standard contract law applies to an insurance contract. *FDIC v. St. Paul Cos.*, 634 F. Supp. 2d 1213, 1218 (D. Colo. 2008). "If the insurance policy is unambiguous, it should be enforced according to its plain terms." *Id.* (quoting *FDIC v. Am. Cas. Co.*, 843 P.2d 1285, 1289–90 (Colo. 1992)). "Only in an instance of ambiguity should the agreement be construed against the insurer to find coverage." *Id.*; *accord TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1199 (D. Colo. 2018) (stating that policy language must be construed against the insurer when it is reasonably susceptible on its face to more than one interpretation and is thus ambiguous).

Here, the term "perform any other intended function" is ambiguous. Preventing water from entering the building would be the primary function of the roof metal at issue here; however, that function is identified in the contract in the preceding disjunctive clause. Thus, "any other intended function" necessarily *excludes* water re-direction, but the contract is silent as to what it *includes*.[1] Additionally, as noted above, other insurance contracts provide definition to the term "intended function," but this one does not.

The matter that gives me the most pause in analyzing Plaintiffs' motion is their failure, now or in the original briefing, to provide any type of evidence whatsoever that aesthetics or cosmetics is an intended function—not even an affidavit averring as to their own intentions. Nevertheless, a motion to alter or amend that reiterates issues originally raised in the application *and* that seeks to challenge the legal correctness of the court's judgment by arguing that the district court misapplied the law or misunderstood the litigant's position is correctly asserted pursuant to

---

[1] Defendant does not address this distinction in its response, focusing instead on the roof metals' "intended function" of facilitating draining and preventing water leakage and whether that function was impaired. *See* Def's Resp. to Mot. for Recons. 3, ECF No. 87.

Fed. R. Civ. P. 59(e). *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). I believe that the original Order should have addressed whether the contractual provision "no longer . . . perform(s) any other intended function" is ambiguous. Because I now find that it is, and because a fact issue exists as to the intended function (other than water re-direction) that the roof metal performs,[2] summary judgment is improper on this issue. Plaintiffs have provided enough of a dispute as to the contract's meaning to justify a trial. "If . . . the contract is susceptible of more than one reasonable interpretation, it is ambiguous, and its meaning must be determined as an issue of fact." *Pres. at the Fort, Ltd. v. Prudential Huntoon Paige Assocs.*, 129 P.3d 1015, 1017–18 (Colo. App. 2004). I need not address the other points raised by Plaintiffs.

## CONCLUSION

For these reasons, summary judgment is not proper on the roof-replacement issue. Therefore, Plaintiffs' Motion for Reconsideration [filed July 12, 2018; ECF No. 84] is **granted**.

Dated and entered this 19th day of September, 2018, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[2] Defendants assert that impact on the "functionality" of the roof metal controls here, but I believe that begs the question. After all, "any other intended *function*" is the contractual term, and that term necessarily does not include preventing water from entering the house.