IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01949-MEH

KERRY FISHER, and
DEBORAH FISHER,

    Plaintiffs / Counter Defendants,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

    Defendant / Counter Claimant.

_____

**ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION OF COURT'S ORDER RE: ORDER ON MOTION FOR RECONSIDERATION OF COURT'S ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
_____

**Michael E. Hegarty, United States Magistrate Judge**.

    The Defendant has asked for reconsideration [filed November 14, 2018; ECF No. 100] of my September 19, 2018 Order granting reconsideration of my June 14, 2018 Order granting in part and denying in part Defendant's Motion for Summary Judgment. In my original summary judgment order, I granted summary judgment for Defendant as to coverage for damage to Plaintiffs' home's metal roofing materials. Upon reconsideration, I found that one section of the parties' contract of insurance was ambiguous as applied to the facts of this case. Because I maintain my belief that this particular section is ambiguous, Defendant's motion is **denied.**

    In my order granting reconsideration, I analyzed the contract's provision that the insurer "will not pay for any damage caused by hail to any metal vent, flashing, drip edge, ridge, valley, accessory, or trim unless such metal component . . . will no longer: (1) prevent water from entering the building; or (2) perform any other intended function." Defendant argues that I conflated two functions of the roofing materials: preventing water from entering the house, and redirecting the

water to some safe place. I originally found that the second clause's words "perform any other intended function" were ambiguous, since the first clause already dealt with the traditional functionality of roofing materials—preventing water from entering the building. Thus, I found the second clause may well encompass Plaintiffs' definition as including the aesthetic purpose served by very expensive copper roofing materials on a very expensive home in a very expensive neighborhood. Defendant now argues that clause (1) covers the function of preventing water from penetrating the roof of the home, while clause (2) covers the function of redirecting the water away from the home, a theory provided by an affidavit from Defendant's appraiser. Defendant believes this renders the contract unambiguous and asserts that Plaintiffs' "aesthetic purpose" argument, unsupported by evidence other than conclusory statements, is insufficient to create a triable issue. Of course, the mere fact that the parties disagree about the meaning of the insurance policy does not make the policy ambiguous. *Cohen v. Empire Gas. Co.*, 771 P.2d 29, 31 (Colo. Ct. App. 1989).

Defendant's motion should be denied because I find the language "perform any other intended function" to be ambiguous. This language is incredibly broad and without any definition within the insurance contract. What does "perform" mean? Why does the contract use the word "any" with the word "other," rather than "any reasonable" or "any logical" or "any defined" or "any material" or "any protective"? Doesn't the word "other" exclude the water redirection purpose (see below)? Why does it use the word "intended" rather than any of those words listed above? Whose "intent" decides? If the Plaintiffs', then they have revealed that the pleasant appearance of their roof is one of their intended functions. If the Defendant's, then aesthetics is clearly not one of its intended purposes. If some sort of industry standard, then I do not believe an appraiser is an appropriate expert to establish the meaning of these words, to the preclusion of any

2

other interpretation as a matter of law. What exactly does "function" mean in the contract? For example, if aesthetics can never be part of a "function" of a roof, why do we have so many options concerning materials for roofs, including asphalt, composite asphalt, wood, wood shake, metal (in many different options and looks), clay or cement tiles, slate, and on and on (all created in various sizes, shapes and colors). Here, the intent of the parties is a question of fact. "A contract is ambiguous if it is fairly susceptible of more than one interpretation and, if so, the determination of the parties' intent is a question of fact." *Moland v. Indus. Claim Appeals Office of the State*, 111 P.3d 507, 510 (Colo. Ct. App. 2004); *see Gagne v. Gagne*, 338 P.3d 1152, 1163 (Colo. Ct. App. 2014) ("If a contract is ambiguous, the determination of the parties' intent is a question of fact.").

Furthermore, I do not agree with Defendant's bright-line distinction between "prevent[ing] water intrusion" and "assisting with drainage from the roof (i.e., water re-direction)." Although not desiring to become hypertechnical, preventing water intrusion is inherently water "re-direction." Rain falling from the sky will continue its trajectory until redirected. Roofing materials redirect rain at the same time—and while performing the same function—as preventing water intrusion. Preventing water intrusion requires not simply allowing the water to slide off the roof, otherwise it would create pools of water on the ground and enter (or intrude into) the house in places other than the roof. Modern roofing systems stop water from entering the house both from above and below, by providing gutters, downspouts, and even drainage away from the foundation.

Finally, as I noted in my September 19, 2018 order, this insurance contract, unlike others that have been analyzed by the courts, has no exclusion for aesthetic or cosmetic damage, nor does it limit "intended function" to the purpose of protecting the house from the elements. It was drafted in an ambiguous manner, a dispute has now arisen as to the meaning of the ambiguous section,

3

and the record does not permit me to definitively adopt Defendant's preferred interpretation as a matter of law. If, as Defendant argues, water re-direction is the only reasonable "other intended function" of metal flashing, why did the contract not so state? Why would the contract include the possibility of multiple "other intended function[s]" if there were no other reasonable alternatives? To be sure, I do not disagree with the Defendant's assertion that the quality of its proof on this issue certainly appears to be stronger than Plaintiffs', as I noted in my prior decisions addressing the Plaintiffs' lack of expert or other attested evidence. But I believe the anticipated testimony of their intent (as proffered in the Plaintiffs' briefing) concerning the function of the roofing metals is sufficient to at least create an issue of fact subject, of course, to Fed. R. Civ. P. 50(a).

In Colorado, "[i]nterpretation of a written contract is generally a question of law for the court." *Pepcol Mfg. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984). "Whether an ambiguity exists is also a question of law." *Id.* at 1314. Because I have found an ambiguity here, it will be necessary to consider relevant extrinsic evidence of intent. *Id.* I believe that the current record is currently insufficient to interpret the contractual provision at issue here. Therefore, this issue will have to be decided by an evidentiary hearing, trial, or some other appropriate fashion.

For the foregoing reasons, summary judgment is not proper on the metals replacement issue. Therefore, Defendant's Motion for Reconsideration [filed November 14, 2018; ECF No. 100] is **denied**.

Dated and entered this 9th day of January, 2019, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge